Robert A. Waller, Jr. (SBN 169604)
LAW OFFICE OF ROBERT A. WALLER, JR.
P.O. Box 999
Cardiff-by-the-Sea, California 92007
Telephone:    (760) 753-3118
Facsimile:    (760) 753-3206
Email:          robert@robertwallerlaw.com

Patricia L. Zlaket (SBN266149)
Zlaket Law Offices, APC
550 W "C" St Ste 1690
San Diego, California 92101
Telephone:    (619) 324-7487
Facsimile:    (619) 345-4697
Email:          patti@zlaketlawoffices.com

Attorneys for Plaintiff KELLEY GAINES and all others similarly situated

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLEY GAINES, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>v.<br><br>CADILLAC AUTOMOBILE COMPANY, a Division of GENERAL MOTORS, LLC, A Delaware Corporation; and DOES 1 through 25, inclusive,<br><br>       Defendants. | CASE NO.    **'17 CV 0989 LAB JLB**<br><br>**CLASS ACTION COMPLAINT**:<br>(1) Breach of Express Warranty;<br>(2) Violations of California's Consumer Legal Remedies Act [Cal. Civil Code §1750, *et seq*];<br>(3) Violations of California's Unfair Competition Law [Cal. Bus. & Prof. Code §17200, *et seq*, §17500, *et seq*];<br>(4) Unjust Enrichment;<br>(5) Declaratory Relief<br><br>**JURY TRIAL DEMANDED** |

       Plaintiff KELLEY GAINES ("Plaintiff" or "Plaintiff GAINES") alleges:

**I.**

## NATURE OF THE ACTION

       1.    Plaintiff GAINES brings this action for herself and on behalf of all persons who purchased or leased model years 2010-2013 Cadillac SRX vehicles manufactured, distributed, and/or sold by Cadillac Automobile Company, a Division of General Motors LLC and/or related subsidiaries and/or affiliates (hereinafter "Defendant" or "Defendant Cadillac") with defective sunroof design, materials, and/or workmanship including but not limited to the sunroof drains and/or hoses (hereinafter the "Class Vehicles").

2.     The Class Vehicles were designed and/or manufactured with defective sunroof seals and/or sunroof drains (referred to herein as the "Leaking Sunroof defect") which causes outside water to enter into the passenger compartment of the vehicle. The intrusion of water into the passenger compartment results in foreseeable and anticipated property damage to Class Vehicles including wet and/or moldy carpet, damage to interior components, including wiring, electronic modules, and the sound deadener requiring repair or replacement of the components parts and/or cleaning of vehicles caused by the Leaking Sunroof defect.

3.     Upon information and belief, Defendant has denied warranty coverage for Class Vehicles with the Leaking Sunroof defect including providing warranty coverage for the costs associated with repairing and/or replacing component parts and/or necessary cleaning of vehicles caused by the Leaking Sunroof defect. Plaintiff is informed, believe and thereon allege that on newer Cadillac SRX models (2014 - newer), Defendant has redesigned and/or corrected the Leaking Sunroof defect; thus it may be reasonably inferred the design, materials, and/or manufacture of the sunroof seal and/or drain on the 2010-2013 model year vehicles is/are defective in material and/or workmanship and not suitable in the subject Class Vehicles.

4.     Plaintiff alleges that for the Class Vehicles, Defendant provided an express 48-month (4-year), 50,000 mile Bumper-to-Bumper Limited Warranty with no deductible. Plaintiff alleges the "Bumper-to-Bumper Limited Warranty" covers vehicles registered in the U.S. and Canada from the date the vehicle is first delivered until it reaches 4 years or 50,000 miles (whichever occurs first). Defendant's express warranty covers the vehicle from bumper to bumper on any vehicle defect related to materials or workmanship. Attached hereto as Exhibit "1" is a screenshot from Cadillac's website providing information about its Bumper-to-Bumper Limited Warranty.

5.     Plaintiff alleges that for Cadillac SRX model years 2011 - 2013 Class Vehicles Defendant also provided an express warranty which Defendant calls "Cadillac Shield." Defendant makes the following advertisement and/or representation about its Cadillac

Shield express warranty: "At Cadillac, we believe our owners deserve it all. That's why every 2011 or newer vehicle is backed by Cadillac Shield, the most comprehensive suite of owner benefits by any luxury automotive brand in the world. From innovations like Remote Vehicle Diagnostics and advanced mobile apps to our Premium Care Maintenance program, Cadillac Shield gives luxury owners everything they need." Attached hereto as Exhibit "2" is a screenshot from Cadillac's website providing information about its Cadillac Shield warranty.

6.     The express "Bumper-to-Bumper Limited Warranty" offered by Defendant and its "Cadillac Shield" warranty constitute contracts between Defendant and the consumers, including Plaintiff and the class members, who purchased or leased Class Vehicles. Privity thus exists between Plaintiff and the class members on the one hand and Defendant on the other with respect to Defendant's express warranties.

7.     In or about August 30, 2013, within the initial Bumper-to-Bumper Limited Warranty period of the Class Vehicles, Defendant issued General Motors Document ID: 3610923, #PI0044D "Water Leak at Driver/Front Passenger Floor Area and/or Front Carpet Wet - (Aug 30, 2013), which provides that "GM bulletins are intended for use by professional technicians, NOT a 'do-it-yourselfer'." Attached as Exhibit "3" to this Class Action Complaint is a copy of Document ID: 3610923, #PI0044D. Defendant therefore intended that Class Vehicles with the Leaking Sunroof defect are not to be repaired and/or replaced by anyone other than a professional technician. According to Document ID: 3610923, #PI0044D the "Condition/Concern" is that "Some customers may comment on seeing a water leak in the driver or front passenger floor area and/or finding the front carpet wet." Defendant identified "the most common causes of this concern are: • There may be a void in the cowl seam sealer, in the corners below the sunroof drain hose grommets. • The sunroof front drain hose grommet(s) may not be connected or fully sealed in the cowl panel or at the sunroof frame spigot. • The sunroof front drain hoses are mis-routed or are too short, and display a higher level of tension. This higher tension may tend to cause a future disconnect or unseating of the grommet." Defendant stated in Document

ID: 3610923, #PI0044D that "This PI has been revised to update the Condition/Concern, Recommendation/Instructions sections and update the Warranty Information with the Global Labor Code (GLC). Please discard PI0044C." Defendant also identified in Document ID: 3610923, #PI0044D the labor operation and parts necessary to repair the Leaking Sunroof defect under warranty. *See*, Exhibit "3" at pg 7.

8.   In or about September 2013, within the initial Bumper-to-Bumper Limited Warranty period of the Class Vehicles, Defendant issued Service Bulletin (SB-10052823-4367), Bulletin No. PI0044D, which provided information relating to the Leaking Sunroof defect. Attached hereto as Exhibit "4" is a copy of SB-10052823-4367, Bulletin No. PI0044D. According to Service Bulletin PI0044D the "Condition/Concern" is that "Some customers may comment on seeing a water leak in the driver or front passenger floor area and/or finding the front carpet wet." Defendant identified "the most common causes of this concern are: • There may be a void in the cowl seam sealer, in the corners below the sunroof drain hose grommets. • The sunroof front drain hose grommet(s) may not be connected or fully sealed in the cowl panel or at the sunroof frame spigot. • The sunroof front drain hoses are mis-routed or are too short, and display a higher level of tension. This higher tension may tend to cause a future disconnect or unseating of the grommet." Defendant stated in Service Bulletin No. PI0044D that "This PI has been revised to update the Condition/Concern, Recommendation/Instructions sections and update the Warranty Information with the Global Labor Code (GLC). Please discard PI0044C." Defendant also identified in Service Bulletin No. PI0044D the labor operation and parts necessary to repair the Leaking Sunroof defect under warranty. *See*, Exhibit "4" at pg 6.

9.   In or about January 14, 2015, Defendant issued Document ID No. 4060832, entitled "#14225: Customer Satisfaction - Sunroof Drain Hose Leaks (Jan. 14, 2015)" the subject of which is "14225 - Sunroof Drain Hose Leaks; Models" 2010-2012 Cadillac SRX Equipped with Sunroof (RPO C3U)." This Customer Satisfaction program excluded specifically vehicles located in California.

10.     According to Defendant's documents and records as early as August 2013 and during the original express warranty period, Defendant identified the nature and cause of the Leaking Sunroof defect in the Class Vehicles and the recommended repair and/or correction.

11.     Based on its own Service Bulletins and Customer Satisfaction programs, Defendant had actual knowledge and notice, or in the exercise of reasonable care should have known, during the warranty period covering the Class Vehicles of the existence and nature of and correction for the Leaking Sunroof defect.

12.     The Leaking Sunroof defect inhibits Plaintiff's and the class members' enjoyment and use of their vehicles as well as the proper and safe use of their vehicle's sunroof by failing to keep water out of the interior passenger compartment of the Class Vehicles.  The Leaking Sunroof defect also presents a safety hazard in that it can result in damage to the vehicle's interior components, including wiring and electronic modules.

13.     Notwithstanding Defendant's actual or constructive knowledge of the Leaking Sunroof defect during the warranty period Defendant required Plaintiff and the class members to pay from their own pockets the costs for parts and labor to repair and/or replace component parts associated with the Leaking Sunroof defect as well as for cleaning and/or sanitization of the vehicle's carpet and any other repairs caused by the Leaking Sunroof defect.  As a result of Defendant's alleged misconduct Plaintiff and the class members were harmed and suffered actual harm and damages in that they parted with their own money.

14.     Plaintiff and the class members continue to be harmed and suffer actual damages in that Class Vehicles have manifested, and continue to manifest, the Leaking Sunroof defect.  Defendant has not provided Plaintiff and the class members with a permanent remedy for the Leaking Sunroof defect, and indeed Defendant refused and excluded Plaintiff and the class members from the Customer Satisfaction program and warranty repairs for the Leaking Sunroof defect provided therein.  Plaintiff and the class members have incurred, and will continue to incur, out-of-pocket unreimbursed costs and

1   expenses relating to repairing, replacing and/or cleaning vehicles caused by the Leaking
2   Sunroof defect.

3        15.     Defendant's decision to exclude specifically the Class Vehicles from
4   Defendant's express warranty as well as Defendant's Customer Satisfaction Program
5   constitutes a breach of its express warranty.

6        16.     Defendant's decision to deny warranty coverage to the Class Vehicles for
7   costs of parts and/or labor associated with repairing, replacing and/or cleaning vehicles
8   with the Leaking Sunroof defect constitutes a breach of its express warranty.

9        17.     Plaintiff alleges Defendant made the decision to deny and/or refuse to
10   provide warranty coverage for the Leaking Sunroof defect and instead forced consumers
11   to pay from their own pockets the costs for parts and/or labor to repair, replace the
12   Leaking Sunroof defect and/or clean their vehicles.  Plaintiff alleges Defendant engaged
13   in these acts and conduct for the purpose of saving its own money and for its own selfish
14   financial and economic gain and to the financial detriment of its own customers and
15   despite its actual knowledge of the existence of the Leaking Sunroof defect. Plaintiff alleges
16   Defendant's conduct and actions as herein alleged were done with a knowing, conscious,
17   purposeful, willful, malicious and/or oppressive disregard for the rights of Plaintiff and
18   the class members.

19        18.     Plaintiff alleges Defendant has failed to take reasonable measures to
20   communicate to owners of Class Vehicles the existence of the Leaking Sunroof defect and
21   the damage it foreseeably causes despite the reasonable expectation of consumers that a
22   properly working and properly designed and/or manufactured sunroof would not cause
23   water to intrude into their vehicle.

24        19.     Given the Leaking Sunroof defect is known or anticipated by Defendant to
25   present a safety hazard to Class Vehicles in that it can result in damage to the vehicle's
26   interior components, including wiring and electronic modules, a recall should have been
27   issued for the Class Vehicles and the Class Vehicles should not have been excluded from
28   the Customer Satisfaction program.

---

20.     Plaintiff alleges the reasonable consumer would consider material information about the Leaking Sunroof defect which results in water intruding into the passenger compartment of consumer's vehicle and causes wet/saturated carpet, wet/saturated padding between the firewall and instrument panel assembly and which can result in a safety risk from damage to the vehicle's interior components, including wiring and electronic modules.

21.     Plaintiff is informed and alleges Defendant delivered the following number of Cadillac SRX vehicles during the model years 2010-2013 with the Leaking Sunroof defect:

| Model Year: | Number of Cadillac SRX Vehicles: |
|---|---|
| 2010 | 51,094 |
| 2011 | 56,905 |
| 2012 | 57,485 |
| 2013 | 56,776 |
| Total: | 222,260 |

22.     Based on these numbers Plaintiff alleges California has significant contacts or an aggregation of contacts to the claims asserted by Plaintiff and the class members.

**II.**

**THE PARTIES**

**A.     Plaintiff KELLEY GAINES**

23.     Plaintiff KELLEY GAINES resides in San Diego County, California. Plaintiff owns a model year 2010 Cadillac SRX which was purchased new and which was placed into service by Defendant in or about May 2010.

24.     Plaintiff alleges Defendant Cadillac shipped Plaintiff's vehicle to California for sale in the state. Plaintiff's vehicle was manufactured, sold, distributed, advertised, marketed, and warranted by Defendant and bears the Vehicle Identification No. 3GYFNAEY0AS604281.

25.     Plaintiff purchased her Cadillac vehicle primarily for her personal, family, and household use.

26.     Plaintiff 's vehicle experienced the Leaking Sunroof defect in late-February 2017, when Plaintiff got into her vehicle and found the floorboard carpet soaked from water.  On or about February 28, 2017, Plaintiff contacted Marvin K. Brown Auto Center about the damage to her vehicle and Marvin K. Brown Auto Center opened a repair order.

27.     On or about March 7, 2017, Plaintiff took her Cadilla SRX vehicle to Marvin K. Brown Auto Center in San Diego, California to be repaired and cleaned.  Upon inspection of the vehicle it was discovered the padding between the firewall and instrument panel assembly was saturated from water intrusion.

28.     The repairs to Plaintiff's vehicle included an electrical system diagnostic, replacement of both sunroof drain tubes. Upon inspection of Plaintiff's it was discovered that the right front sunroof drain hose was loose, and the right front sunroof drain was not seated in the grommet at the firewall.  The repairs to Plaintiff's vehicle were performed pursuant to PI #PI0044D and both front sunroof drain tubes were replaced.  Plaintiff alleges the damage to her vehicle and the necessary repairs were caused by the Leaking Sunroof defect.

29.     Plaintiff was charged $442.48, to repair the Leaking Sunroof defect, another $513.00 for removal, drying and cleaning of the front and rear interior carpet, and $50.00 to shampoo the carpet. Plaintiff filed a claim with her automobile insurance company who paid a portion of the costs of repair. Plaintiff, however, was still required to and did pay her insurance deductible of $250.00, from her own pocket to repair the damage caused by the Leaking Sunroof defect and has thus incurred actual harm and damages as a result of the Leaking Sunroof defect.

30.     Plaintiff alleges had she been advised, informed, told or otherwise made aware by Defendant of the existence of the Leaking Sunroof defect and the potential damage to the vehicle the defect caused, as well as the loss of enjoyment and use of her vehicle, Plaintiff would have taken her vehicle for the repairs and/or corrections identified

by Defendant in its "General Motors Document ID: 3610923, #PI0044D "Water Leak at Driver/Front Passenger Floor Area and/or Front Carpet Wet - (Aug 30, 2013)" as well as Defendant's Service Bulletin (SB-10052823-4367), Bulletin No. PI0044D, and Document ID No. 4060832, entitled "#14225: Customer Satisfaction - Sunroof Drain Hose Leaks (Jan. 14, 2015)" the subject of which is "14225 - Sunroof Drain Hose Leaks; Models" 2010-2012 Cadillac SRX Equipped with Sunroof (RPO C3U)" and Plaintiff would not have suffered the harms, losses and/or damages she did when her sunroof leaked in February 2017.

### A.   Defendant Cadillac Automobile Company

31.    Defendant CADILLAC AUTOMOBILE COMPANY, is a division of General Motors LLC, a Delaware Corporation whose principal place of business and corporate nerve center is in Detroit, Michigan.  Defendant Cadillac is registered with the California Department of Corporations to conduct business in California.

32.    Based on information and belief Plaintiff alleges Defendant has approximately sixty-four (64) Cadillac dealerships throughout California and thus conducts significant business in California.  By comparison, Plaintiff is informed and thereon alleges Defendant has only fifty-two (52) Cadillac dealerships in the state of Michigan.

33.    At all times relevant herein, Defendant was engaged in the business of designing, manufacturing, constructing, assembling, marketing, warranting, distributing, selling, leasing, and servicing Cadillac automobiles, including the Class Vehicles, and other motor vehicles and motor vehicle components throughout the United States and in particular within the state of California.

### III.

### JURISDICTION

34.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332 (diversity of citizenship).

35.    This is a class action.  Plaintiff is a resident of California and Defendant is a Delaware corporation whose principal place of business and corporate nerve center is

1   located in Detroit, Michigan, but who does significant business in California through its

2   approximately sixty-four (64) Cadillac dealerships in the state and thus has minimum

3   contacts with California.  By comparison Defendant has only approximately fifty-two (52)

4   Cadillac dealerships in Michigan.

5                                    **IV.**

6                                   **VENUE**

7        36.     Venue is proper in this District Court pursuant to 28 U.S.C. § 1391(b)(2)

8   because a substantial part of the events or omissions giving rise to the claim occurred, or

9   a substantial part of property that is the subject of the action is situated, in San Diego

10  County, California.

11                                   **V.**

12                   **APPLICATION OF CALIFORNIA LAW**

13       37.     California law applies to all claims in this action.

14       38.     Plaintiff GAINES asserts her claims against Defendant seeking damages and

15  equitable relief on behalf of herself and all other persons and entities similarly situated,

16  under the laws of the State of California.

17       39.     The events giving rise to this action occurred and took place in California.

18  In particular, Defendant shipped Plaintiff's vehicle to California for sale in the state;

19  Plaintiff purchased her vehicle in California; and Plaintiff's vehicle has at all times been

20  located in California.   The damage to Plaintiff's vehicle occurred in California and

21  Plaintiff's vehicle was repaired by a Cadillac dealership and service center located in

22  California.

23       40.     Despite Defendant's actual and/or constructive knowledge of the Leaking

24  Sunroof defect Defendant excluded from its #14225 Customer Satisfaction -Sunroof Drain

25  Hose Leaks (Jan. 14, 2015) bulletin all Cadillac SRX Class Vehicles located in California,

26  including Plaintiff's vehicle.

27

28

---

*Gaines v. Cadillac Automobile Company;*
CLASS ACTION COMPLAINT                    -10-

41.     Of the states excluded specifically from Defendant's #14225 Customer Satisfaction -Sunroof Drain Hose Leaks (Jan. 14, 2015) bulletin Plaintiff is informed and alleges Defendant has approximately sixty-four (64) Cadillac dealerships throughout California which is more than any other state with an interest in the action. California therefore has significant contacts and/or a significant aggregation of contacts to the claims asserted by Plaintiffs and the class members.  California has a materially greater interest than any other state in enforcing the rights and remedies granted to consumers under the California laws invoked in this complaint. These rights and remedies further strong fundamental public policies of the state of California.

42.     The contacts between Defendant and the state of California create significant state interest and ensure that the application of California law is not arbitrary or unfair.

43.     California has a clear, legitimate and substantial interest in controlling the actions, rights, and liabilities of a corporation with regard to the sales and/or leasing of its products that are occurring within the state of California.

44.     California has a clear, legitimate and substantial interest in preventing unlawful, unfair or fraudulent business practices in this state which clearly have an effect and impact in California and its consumers.

45.     California has a legitimate and compelling interest in preserving a business climate free of unlawful, unfair, deceptive, and/or fraudulent business practices. California business depends on a national market to support its industry.  The California remedy for unlawful, unfair, deceptive and/or fraudulent business practices helps to ensure that the success and growth of California business will continue.

46.     Because the basis of the claim of every class member emanates from California, the state of California has an important interest in applying its law to punish and deter the alleged wrongful conduct.

/ / /

/ / /

/ / /

# VI.

## CLASS ACTION ALLEGATIONS

47.     Plaintiff brings this lawsuit as a class action on behalf of herself and all others similarly situated as members of the proposed class/sub-classes pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

### A.     Numerosity & Ascertainability

48.     Although precise numbers are not available at the time of the filing of this Class Action Complaint, Plaintiff alleges Defendant delivered and sold or leased approximately 222,260 of the Cadillac SRX vehicles model years 2010-2013 ("Class Vehicles").  While not all these vehicles were located in California and the other states excluded specifically from Defendant's Document ID No. 4060832, entitled "#14225: Customer Satisfaction - Sunroof Drain Hose Leaks (Jan. 14, 2015)" the subject of which is "14225 - Sunroof Drain Hose Leaks; Models" 2010-2012 Cadillac SRX Equipped with Sunroof (RPO C3U), based on the 222,260 total number of vehicles delivered Plaintiff alleges there are thousands, tens of thousands, if not hundreds of thousands of Class Vehicles. Therefore, the potential members of the class as defined are so numerous and are dispersed throughout California and the United States such that joinder of all class members is impracticable.  Disposition of the claims of the class members in a single action will provide substantial benefits to all parties and to the Court.

49.     Based on information presently available the proposed class and/or sub-classes is/are currently defined as:

> All current and former owners or lessees of 2010-2013 model year Cadillac SRX vehicles located in California and who paid for repair/replacement of their vehicles because of the Leaking Sunroof defect.

Excluded from the class/sub-class are: (1) Defendant Cadillac and any entity or division in which Defendant has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Magistrate, District Court Judge or other

1   judicial officers to whom this case is assigned and their staff and immediate family; and (3)

2   claims of personal injury by persons who may have suffered personal injuries as a result

3   of the Leaking Sunroof defect.

4        50.    Plaintiff reserves the right to amend the class and/or subclass definitions if

5   discovery and further investigation reveal the class/sub-class should be expanded,

6   otherwise divided into subclasses, or modified in any other way.

7        51.    Class Members are readily identifiable from information and records in

8   Defendant's possession, custody, and/or control, as well as from records kept by the

9   California Department of Motor Vehicles if necessary.

10         **B.**    **Typicality**

11        52.    The claims of Plaintiff GAINES as the representative plaintiff for members

12   of the proposed class/sub-classes are typical of the claims of the class in that the

13   representative Plaintiff, like all class members, purchased or leased a Class Vehicle

14   designed, manufactured, and distributed by Defendant. The representative Plaintiff, like

15   all class members, has been damaged by Defendant's misconduct in that they have

16   incurred and/or will incur out-of-pocket unreimbursed costs and expenses relating to

17   repairing, replacing and/or cleaning vehicles caused by the Leaking Sunroof defect and

18   any other damage proximately caused by the Leaking Sunroof defect.  Furthermore, the

19   factual bases of Defendant's misconduct as herein alleged are common to Plaintiff and all

20   class members and represent a common thread of misconduct resulting in injury to all class

21   members.

22         **C.**    **Adequate Representation**

23        53.    Plaintiff GAINES will fairly and adequately represent and protect the

24   interests of the class. Plaintiff has retained counsel with substantial experience in

25   prosecuting consumer class actions and/or multi-party claims.

26        54.    Plaintiff and her counsel are committed to vigorously prosecuting this action

27   on behalf of and for the benefit of the class and have the resources to do so.  Neither

28   Plaintiff nor their counsel have any interests adverse to those of the class.

---

D.    **Predominance of Common Issues**

55.    There are numerous questions of law and fact common to Plaintiff and class members which predominate over any question affecting only individual class members the answer to which will advance the litigation as to all class members. These common legal and factual issues include:

  a.    whether the Class Vehicles suffer from the Leaking Sunroof defect;

  b.    whether Defendant knew or should have known about the Leaking Sunroof defect, and, if so, how long Defendant has known of the defect;

  c.    whether the defective nature of the Class Vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase or lease a Class Vehicle;

  d.    whether Defendant represented, through its words and conduct, that the Class Vehicles had characteristics, uses, or benefits that they did not actually have, in violation of California's Consumer Legal Remedies Act ("CLRA");

  e.    whether Defendant represented, through its words and conduct, that the Class Vehicles were of a particular standard, quality, or grade when they were of another, in violation of the CLRA;

  f.    whether Defendant advertised the Class Vehicles with the intent not to sell them as advertised, in violation of the CLRA;

  g.    whether Defendant engaged in an unlawful and/or unfair business practice in violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq.;

  h.    whether the Class Vehicles were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability;

  i.    whether Plaintiffs and the other Class Members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

1   j.   whether Defendant should be declared financially responsible for

2   notifying all class members of the Leaking Sunroof defect and for the costs and expenses

3   of permanently remedying the Leaking Sunroof defect in Class Vehicles.

4   **E.   Superiority**

5   56.   Plaintiff and class members have all suffered and will continue to suffer harm

6   and damages as a result of Defendant's unlawful and wrongful conduct. A class action is

7   superior to other available methods for the fair and efficient adjudication of this

8   controversy.

9   57.   Absent a class action, most class members would likely find the cost of

10   litigating their individual claims prohibitively high based on the cost of repairs and/or

11   diminution in value of the Class Vehicles and would therefore have no effective remedy

12   at law. Because of the relatively small size of the individual class members' claims, it is

13   likely that only a few class members could afford to seek legal redress for Defendant's

14   misconduct. Absent a class action, class members will continue to incur damages, and

15   Defendant's misconduct will continue without remedy.

16   58.   Class treatment of common questions of law and fact would also be a

17   superior method to multiple individual actions or piecemeal litigation in that class

18   treatment will conserve the resources of the courts and the litigants, and will promote

19   judicial economy and consistency and efficiency of adjudication.

20   **VII.**

21   **FIRST CAUSE OF ACTION**

22   **(Breach of Express Warranty)**

23   **[Song-Beverly Consumer Warranty Act; Cal. Civil Code §1790, *et seq.*)]**

24   59.   Plaintiff hereby incorporates by reference the allegations contained in the

25   preceding paragraphs of this Complaint.

26   60.   According to Defendant's express warranty for the 2010-2013 Cadillac SRX

27   model year vehicles ("Class Vehicles") the vehicles are subject to a 48-month (4-year),

28   50,000 mile Bumper-to-Bumper Limited Warranty with no deductible. Plaintiff alleges the

"Bumper-to-Bumper Limited Warranty" covers vehicles registered in the U.S. and Canada from the date the vehicle is first delivered until it reaches 4 years or 50,000 miles (whichever occurs first). It covers the vehicle from bumper to bumper on any vehicle defect related to materials or workmanship.

61.    Defendant's stated warranty is an "express warranty" under California law.

62.    Defendant provided all purchasers and/or leasees of Class Vehicles with the express warranty described herein which became a part of the basis of the bargain and a part of the purchase or lease contract between the class members and Defendant.

63.    The seals, hoses and all other parts, components, materials, and/or workmanship associated with the manufacture, installation and/or design of the Leaking Sunroof defect were originally supplied by Defendant.

64.    The Leaking Sunroofs in the Class Vehicles are defective and fail under normal and foreseeable use.

65.    The Leaking Sunroofs in the Class Vehicles were defective when designed, manufactured and/or installed and failed to function properly throughout the express warranty period.  The Leaking Sunroof defect continues to fail and manifest itself even after the warranty period has expired.

66.    Because the Leaking Sunroofs in Class Vehicles were and/or are defective they were substantially likely to fail during the subject vehicles' ordinary useful life.

67.    Defendant breached its express warranty when it refused to repair and/or replace the Leaking Sunroof defect in the Class Vehicles "without deductible" as stated in its express warranty and Defendant required Plaintiff and the class members to pay from their own pockets the costs of parts and/or labor to repair, replace and clean their vehicles for damage caused by the Leaking Sunroof defect.

68.    By virtue of fact Defendant issued Service Bulletin (SB-10052823-4367), Bulletin No. PI0044D, which provided information relating to the Leaking Sunroof (see, Exhibit "1"), as well as issuing Document ID No. 4060832, entitled "#14225: Customer Satisfaction - Sunroof Drain Hose Leaks (Jan. 14, 2015)" the subject of which is "14225 -

1  Sunroof Drain Hose Leaks; Models" 2010-2012 Cadillac SRX Equipped with Sunroof (RPO

2  C3U)" which excluded specifically vehicles located in California (see, Exhibit "3"), at all

3  times Defendant is and has been aware of the Leaking Sunroof defect and its breach of its

4  express warranty as applied to the Class Vehicles.

5      69.    Plaintiff and the class members have been and continue to be damaged by

6  Defendant's breach of its express warranty, including bearing the costs of repairing and/or

7  replacing the Leaking Sunroof defect, and have suffered damages in an amount according

8  to proof at trial.

9      70.    Plaintiff and the class members are entitled to legal and equitable relief

10  against Defendant including damages, specific performance, rescission, attorney's fees,

11  costs of suit, and other relief as appropriate.

12      71.    Plaintiff alleges Defendant made the decision to deny and/or refuse to

13  provide warranty coverage for the Leaking Sunroof defect and instead forced consumers

14  to pay from their own pockets the costs for parts and/or labor to repair, replace the

15  Leaking Sunroof defect and/or clean their vehicles.  Plaintiff alleges Defendant engaged

16  in these acts and conduct for the purpose of saving its own money and for its own selfish

17  financial and economic gain and to the financial detriment of its own customers and

18  despite its actual knowledge of the existence of the Leaking Sunroof defect. Plaintiff alleges

19  Defendant's conduct and actions as herein alleged were willful.

20      72.    As a further proximate result of the aforementioned acts. Plaintiff was

21  required to and did employ attorneys and other legal representatives to represent her and

22  to prosecute these claims on her behalf and on behalf of the members of the class and to

23  enforce an important right affecting the public interest and conferring a significant

24  pecuniary benefit on a large class of persons, namely the owners of Class Vehicles who

25  have been required to pay for repairs and/or replacement of the Leaking Sunroof defect

26  and as a result are entitled to an award of attorney fees and costs pursuant to applicable

27  law, including but not limited to California Civil Code §1794(d) and Code of Civil

28  Procedure §1021.5, in an amount according to proof.

---

*Gaines v. Cadillac Automobile Company;*
CLASS ACTION COMPLAINT       -17-

## VIII.

## SECOND CAUSE OF ACTION

### (Violation of California's Consumer Legal Remedies Act ("CLRA")

### [Cal. Civ. Code §1750, *et seq.*]

73.     Plaintiff hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

74.     Plaintiff brings this cause of action on behalf of herself individually and on behalf of the proposed class members pursuant to Cal. Civil Code §1780 ("Any consumer entitled to bring an action under Section 1780 may, if the unlawful method, act, or practice has caused damage to other consumers similarly situated, bring an action on behalf of himself and such other consumers to recover damages or obtain other relief as provided for in Section 1780.").

75.     Defendant is a "person" as defined by and within the meaning of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1761(c).

76.     Plaintiff and class members are "consumers" as defined by and within the meaning of the CLRA, Cal. Civ. Code § 1761(d).

77.     The Class Vehicles are "goods" as defined by and within the meaning of the CLRA, Cal. Civil Code §1761(a).

78.     Plaintiff purchased and/or leased her 2010 Cadillax SRX vehicle primarily for personal and/or household use.

79.     Defendant's acts and practices, as alleged in this complaint, violated and continue to violate the California CLRA in at least the following respects:

    a.     Representing the Class Vehicles have characteristics, uses, benefits, or qualities which they do not have, to wit: the Class Vehicles have a sunroof that will keep water out while allowing light in [Cal. Civil Code §1770(a)(5)];

    b.     Representing the Class Vehicles are of a particular standard, quality or grade when they are of another, to wit: the Class Vehicles a sunroof that will keep water out while allowing light in [Cal. Civil Code §1770(a)(7)]; and

c.      Representing that a transaction confers or involves rights, remedies, or obligations which it does not have, to wit: the Class Vehicles are covered by an express warranty which covers the vehicle from bumper to bumper on any vehicle defect related to materials or workmanship such as the Leaking Sunroof defect [Cal. Civil Code §1770(a)(14)].

80.      Defendant knew within the express warranty period the Class Vehicles' sunroofs were defectively designed and/or manufactured, would fail prematurely resulting in water intruding into the passenger compartment of the vehicle causing damage, and sunroofs in the Class Vehicles were not suitable for their intended use which was to keep water out of the interior of the vehicle while allowing light into the vehicle.

81.      Notwithstanding Defendant's knowledge of the Leaking Sunroof defect as well as the fact Defendant shipped to, marketed, and sold or leased to consumers in California thousands, if not tens of thousands, of Class Vehicles, Defendant nonetheless excluded the Class Vehicles from its Service Bulletin (SB-10052823-4367), Bulletin No. PI0044D, and Document ID No. 4060832, entitled "#14225: Customer Satisfaction - Sunroof Drain Hose Leaks (Jan. 14, 2015)" the subject of which is "14225 - Sunroof Drain Hose Leaks; Models" 2010-2012 Cadillac SRX Equipped with Sunroof (RPO C3U)" (see, Exhibit "3").

82.      With respect to this cause of action, Plaintiff seeks by this original complaint an order enjoining the methods, acts, and practices complained of herein. Plaintiff does not seek damages by this original complaint but will amend this complaint pursuant to Cal. Civil Code §1782(d) to seek recovery of damages, including punitive damages according to proof, for herself and all others similarly situated after complying with the notice requirements of Cal. Civil Code §1782(a).

83.      Plaintiff alleges Defendant made the decision to deny and/or refuse to provide warranty coverage for the Leaking Sunroof defect and instead forced consumers to pay from their own pockets the costs for parts and/or labor to repair, replace the Leaking Sunroof defect and/or clean their vehicles. Plaintiff alleges Defendant engaged

in these acts and conduct for the purpose of saving its own money and for its own selfish financial and economic gain and to the financial detriment of its own customers and despite its actual knowledge of the existence of the Leaking Sunroof defect. Plaintiff alleges Defendant's conduct and actions as herein alleged were intentional, willful, malicious, fraudulent and/or oppressive in that they were done with a knowing and conscious disregard for the express warranty rights of Plaintiff and the class members. Plaintiff and the class members are therefore entitled to an award of punitive damages pursuant to Cal. Civil Code §1780(a)(4) and Cal. Civil Code §3294 against Defendant in an amount according to proof but sufficient to punish or make an example out of defendant.

84.     As a further proximate result of the aforementioned acts. Plaintiff was required to and did employ attorneys and other legal representatives to represent her and to prosecute these claims on her behalf and on behalf of the members of the class and as a result are entitled to an award of attorney fees and costs pursuant to applicable law, including but not limited to California Civil Code §1780(e), in an amount according to proof.

85.     As a further proximate result of the aforementioned acts. Plaintiff was required to and did employ attorneys and other legal representatives to represent her and to prosecute these claims on her behalf and on behalf of the members of the class and to enforce an important right affecting the public interest and conferring a significant pecuniary benefit on a large class of persons, namely the owners of Class Vehicles who have been required to pay for repairs and/or replacement of the Leaking Sunroof defect and as a result are entitled to an award of attorney fees and costs pursuant to applicable law, including but not limited to California Code of Civil Procedure §1021.5, in an amount according to proof.

/ / /

/ / /

/ / /

# IX.

## THIRD CAUSE OF ACTION

### (Unlawful, Unfair and/or Fraudulent Business Practices)

### [Cal. Bus. & Prof. Code §17200, *et seq.*]

86.     Plaintiff hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

87.     By engaging in the acts, conduct and business practices as alleged herein, Defendant has violated California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq.* More specifically, Defendant engaged in an unlawful, unfair and/or fraudulent business acts or practices by failing and/or refusing to repair, correct or otherwise remedy pursuant to Defendant's express warranty the Leaking Sunroof defect on the Class Vehicles and by requiring Plaintiff and the class members to pay from their own pockets the costs to repair, correct or otherwise remedy the Leaking Sunroof defect.

88.     Defendant engaged in an unlawful business practice by refusing to honor and abide by, and expressly excluding the Class Vehicles from the benefits and privileges of Defendant's express warranty in violation of the Song-Beverly Consumer Warranty Act [Cal. Civil Code §1790, *et seq.*], as herein alleged.

89.     Defendant further engaged in a unlawful business practice by violating the provisions of the California Consumer Legal Remedies Act [Cal. Civil Code §1750, *et seq.*], as herein alleged.

90.     Defendant further engaged in a unlawful business practice by violating the provisions of Cal. Bus. & Prof. Code §17500, *et seq*, as herein alleged.

91.     Defendant engaged in an unfair business practice by refusing to honor and abide by its express warranty covering the Class Vehicles and by expressly excluding the Class Vehicles from warranty coverage for the Leaking Sunroof defect as herein alleged despite Defendant's actual and/or constructive knowledge during the express warranty period of the Leaking Sunroof defect.

92.     Defendant's unfair business practice threatens an incipient violation of consumer protection laws including but not limited to the Song-Beverly Consumer Warranty Act and the Consumer Legal Remedies Act as herein alleged and/or violates the policy and/or spirit of such consumer protection laws or otherwise significantly threatens or harms consumers in the state of California.

93.     Defendant's business practices as herein alleged are likewise unfair because the harms caused to consumers by Defendant's business practice of denying warranty coverage are outweighed by the benefits created.

94.     Defendant engaged in a fraudulent business practice by representing that the Class Vehicles are covered by an express 48-month (4-year), 50,000 mile Bumper-to-Bumper Limited Warranty with no deductible which Defendant represented would cover vehicles registered in the U.S. and Canada from the date the vehicle is first delivered until it reaches 4 years or 50,000 miles (whichever occurs first). Defendant's express warranty covers the vehicle from bumper to bumper on any vehicle defect related to materials or workmanship, as herein alleged.  Attached hereto as Exhibit "1" is a screenshot from Cadillac's website providing information about its Bumper-to-Bumper Limited Warranty.

95.     Defendant engaged in a fraudulent business practice by representing that the Class Vehicles were also covered by an express warranty which Defendant calls "Cadillac Shield."  Defendant makes the following advertisement and/or representation about its Cadillac Shield express warranty:  "At Cadillac, we believe our owners deserve it all. That's why every 2011 or newer vehicle is backed by Cadillac Shield, the most comprehensive suite of owner benefits by any luxury automotive brand in the world. From innovations like Remote Vehicle Diagnostics and advanced mobile apps to our Premium Care Maintenance program, Cadillac Shield gives luxury owners everything they need."  Attached hereto as Exhibit "2" is a screenshot from Cadillac's website providing information about its Cadillac Shield warranty.

96. Plaintiff alleges Defendant's business practice as herein alleged was fraudulent because Defendant had no intention of honoring or abiding by its express warranty or Cadillac Shield warranty which intent was/is manifested by Defendant excluding specifically vehicles located in California from its express warranties and the Customer Satisfaction program and service bulletin as herein alleged.

97. Defendant's fraudulent intent behind its business practice is further evidenced by the fact when Plaintiff experienced the Leaking Sunroof defect and took her vehicle to the Marvin K. Brown Auto Center upon inspection of Plaintiff's vehicle it was discovered that the right front sunroof drain hose was loose, and the right front sunroof drain was not seated in the grommet at the firewall. The repairs to Plaintiff's vehicle were performed pursuant to PI #PI0044D and both front sunroof drain tubes were replaced. Plaintiff alleges the damage to her vehicle and the necessary repairs were caused by the Leaking Sunroof defect. Notwithstanding the fact the damage to Plaintiff's vehicle were caused by the known Leaking Sunroof defect Defendant refused to repair, remedy replace and/or correct Plaintiff's vehicle pursuant to the express warranty and Customer Satisfaction and service bulletin.

98. As a result of Defendant's unlawful, unfair and/or fraudulent business practices as herein alleged Plaintiff paid out of her own pocket costs for the repair, replacement and/or correction of the Leaking Sunroof defect and as such has suffered an injury in fact and lost money as a result of Defendant's conduct.

99. Unless restrained and enjoined from continuing its unlawful, unfair and/or fraudulent business practices as herein alleged Defendant will continue to engage in the alleged unlawful, unfair or fraudulent business practices as alleged herein in violation of Section 17200, *et seq*, for which Plaintiff and the class has no adequate remedy at law. Plaintiffs seek an order of this Court for an injunction and such other equitable relief as set forth herein and as may be fair, just and proper.

100. The actions and conduct of Defendant as herein alleged was implemented, authorized, approved, ratified, and/or directed by managing agents of Defendant.

101.    As a further proximate result of the aforementioned acts. Plaintiff was required to and did employ attorneys and other legal representatives to represent her and to prosecute these claims on her behalf and on behalf of the members of the class and to enforce an important right affecting the public interest and conferring a significant pecuniary benefit on a large class of persons, namely the owners of Class Vehicles who have been required to pay for repairs and/or replacement of the Leaking Sunroof defect and as a result are entitled to an award of attorney fees and costs pursuant to applicable law, including but not limited to California Code of Civil Procedure §1021.5, in an amount according to proof.

IX.

**FOURTH CAUSE OF ACTION**

**(Untrue or Misleading Advertising)**

**[Cal. Bus. & Prof. Code §17500, *et seq.*]**

102.    Plaintiff hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

103.    Defendant has violated California's Unfair Competition Law, Cal. Bus. & Prof. Code §17500, *et seq.* Defendant has violated the UCL's provisions against untrue and misleading advertising by engaging in the acts and practices alleged herein.

104.    Defendant engaged in untrue and/or misleading advertising by representing the Class Vehicles are covered by an express 48-month (4-year), 50,000 mile Bumper-to-Bumper Limited Warranty with no deductible which Defendant represented would cover vehicles registered in the U.S. and Canada from the date the vehicle is first delivered until it reaches 4 years or 50,000 miles (whichever occurs first). Defendant's express warranty covers the vehicle from bumper to bumper on any vehicle defect related to materials or workmanship, as herein alleged.  Attached hereto as Exhibit "1" is a screenshot from Cadillac's website providing information about its Bumper-to-Bumper Limited Warranty.

105.    Defendant further engaged in untrue and/or misleading advertising by representing the Class Vehicles were also covered by an express warranty which Defendant

calls "Cadillac Shield."   Defendant makes the following advertisement and/or representation about its Cadillac Shield express warranty: "At Cadillac, we believe our owners deserve it all. That's why every 2011 or newer vehicle is backed by Cadillac Shield, the most comprehensive suite of owner benefits by any luxury automotive brand in the world. From innovations like Remote Vehicle Diagnostics and advanced mobile apps to our Premium Care Maintenance program, Cadillac Shield gives luxury owners everything they need."   Attached hereto as Exhibit "2" is a screenshot from Cadillac's website providing information about its Cadillac Shield warranty.

106.   Defendant's representations and/or advertisements were untrue and/or misleading because during the express warranty period Defendant had actual knowledge or in the exercise of reasonable care should have known of the Leaking Sunroof defect in the Class Vehicles.  Notwithstanding such knowledge Defendant failed and/or refused to honor or abide by its advertisement and/or representations regarding its express warranties and refused to repair and/or correct the Leaking Sunroof defect "with no deductible" despite the fact the Leaking Sunroof defect was a defect related to materials or workmanship.

107.   Plaintiff and the class members have suffered injury in fact and have parted with and lost their own money and functional property by paying for the costs of repairing the Leaking Sunroof defects as a result of Defendant's refusal and/or failure to honor its express warranty that all Cadillac SRX vehicles come with a "Bumper-to-Bumper Limited Warranty" which covers vehicles registered in the U.S. and Canada from the date the vehicle is first delivered until it reaches 4 years or 50,000 miles (whichever occurs first). It covers the vehicle from bumper to bumper on any vehicle defect related to materials or workmanship.

108.   Unless restrained by this Court, Defendant will continue to engage in untrue and misleading advertising as alleged herein in violation of Section 17500, *et seq,* as to which Plaintiff and the class members have no adequate remedy at law.  Plaintiff and the class seeks an order of this Court for equitable relief as set forth herein.

109.    As a result of Defendant's unlawful, unfair and/or fraudulent business practices as herein alleged Plaintiff has been forced to pay and did pay out of her own pocket the costs to repair, remedy and/or correct the Leaking Sunroof defects and as such Plaintiff has suffered actual harm and damages in an amount according to proof. Defendant should be ordered to restore to Plaintiff and the class members all monies they have spent out of pocket as a result of Defendant's unlawful, unfair and/or fraudulent business practices as herein alleged.

110.    As a further proximate result of the aforementioned acts. Plaintiff was required to and did employ attorneys and other legal representatives to represent her and to prosecute these claims on her behalf and on behalf of the members of the class and to enforce an important right affecting the public interest and conferring a significant pecuniary benefit on a large class of persons, namely the owners of Class Vehicles who have been required to pay for repairs and/or replacement of the Leaking Sunroof defect and as a result are entitled to an award of attorney fees and costs pursuant to applicable law, including but not limited to California Code of Civil Procedure §1021.5, in an amount according to proof.

**IX.**

**FOURTH CAUSE OF ACTION**

**(Unjust Enrichment)**

111.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

112.    To the detriment of Plaintiff and the class members Defendant has been and continues to be unjustly enriched as a result of its unlawful, unfair, wrongful acts and breaches of express warranty as herein alleged. Defendant has been unjustly enriched by requiring Plaintiff and the class members to pay out of their own pockets the costs associated with repairing damage to the Class Vehicles caused by the Leaking Sunroof defect. Defendant has been unjustly enriched by virtue of its refusal and/or failure to honor its express warranty as herein alleged and its ability to hold onto and retain to the

detriment of Plaintiff and the class members the financial resources Defendant would otherwise expend paying for repairs caused by the Leaking Sunroof defect.

113.    Defendant continues to be unjustly enriched and benefit to the detriment and at the expense of Plaintiff and the class members.

114.    As between the parties it would be unfair and unjust for Defendant to retain the benefits attained by its actions.  Accordingly, Plaintiff and the class seek full restitution of Defendant's enrichment, benefits, and ill-gotten gains acquired as a result of the unlawful, unfair, wrongful acts and breaches of express warranty as herein alleged.

## XI.

## SIXTH CAUSE OF ACTION

### (Declaratory Relief)

115.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

116.    An actual controversy has arisen and exists between Plaintiff, individually and on behalf of the class members on the one hand, and Defendant on the other hand concerning their respective rights and duties with regard to the Leaking Sunroof defect and the rights and duties under Defendant's express warranty as herein alleged.

117.    Defendant's express warranty constitutes a contract of adhesion, drafted by Defendant and presented in its entirety to Plaintiff and the class members.  Defendant is one of the largest automobile manufacturing companies in the world and a large international corporation.  Plaintiff and the members of the class by contrast are individuals.  Plaintiff and the class members do not possess anywhere near the economic power Defendant possesses and there is no opportunity for Plaintiff or the class members to negotiate the terms of Defendant's express warranty, or Defendant's refusal to honor and abide by its express warranty when it expressly excluded the Class Vehicles from Defendant's Customer Satisfaction program and service bulletin as herein alleged.

118.    Because of the disparity in negotiating and economic power between Defendant and Plaintiff and the class members, Plaintiff and the class members are powerless to do anything other than pay out of their own pockets the costs of repairing damage caused by the Leaking Sunroof defect despite Defendant's express warranty. Under the circumstances Plaintiff's and the class members' only realistic option is to either pay themselves for the repair and/or correction of the Leaking Sunroof defect or live with a water soaked vehicle.

119.    Defendant's express warranty should be liberally construed in favor of Plaintiff and the class members and any ambiguities resolved against Defendant.

120.    As alleged herein Defendant denies and continues to systematically deny warranty coverage for the Leaking Sunroof defect for those Class Vehicles forcing Plaintiff and the class members to bear the costs associated with repairing and/or replacing the Leaking Sunroof defect even though the Leaking Sunroofs are defective in their design and/or manufacture under normal circumstances.   Defendant should have repaired and/or replaced and should in the future repair and/or replace the Leaking Sunroofs in the Class Vehicles.

121.    Plaintiff, individually and on behalf of the members of the class, desires a judicial declaration of their and Defendants' rights and duties.

122.    Plaintiff, individually and on behalf of the members of the class, prays for and requests a judicial declaration the Leaking Sunroof on the Class Vehicles are covered by Defendant's express warranty which Defendant should repair and/or replace at no cost to Plaintiff or the class members.

123.    A judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiff, individually and on behalf of the members of the class, may ascertain her/their rights and duties and the rights and duties of Defendant.

/ / /

/ / /

/ / /

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff KELLEY GAINES, for herself and all others similarly situated, pray for relief as to each cause of action set forth herein as follows:

1.      Certification of the action as a class action with respect to Plaintiff's claims for injunctive relief and claims for damages, and appointment of Plaintiff as the Class Representative and her counsel of record as Class Counsel;

2.      A judicial determination that the Leaking Sunroof defect is covered by Defendant's express warranty as alleged herein;

3.      An award of damages in the amount of monies already paid by class members for the cost of repairing or replacing the Leaking Sunroof defect on the Class Vehicles;

4.      With respect to the Second Cause of Action for violations of the Cal. Consumer Legal Remedies Act ("CLRA") an order enjoining Defendant from continuing to engage in the methods, acts and practices complained of herein;

5.      With respect to the Second Cause of Action for violations of the Cal. Consumer Legal Remedies Act ("CLRA") an award of punitive or exemplary damages in an amount according to proof but sufficient to punish or make an example of Defendant;

6.      An award of equitable relief as follows: (a) enjoining Defendant from continuing to engage in the unlawful, unfair and/or fraudulent business practices described in this complaint, (b) requiring Defendant to make full restitution of all monies wrongfully obtained as a result of the conduct described in this complaint, (c) requiring Defendant to disgorge all ill-gotten gains flowing from the conduct described in this complaint, (d) requiring Defendant to provide public notice of the true nature and scope of the Leaking Sunroof defect as complained of herein, (e) requiring Defendant to abide by the terms of its warranty and repair and/or replace the Leaking Sunroofs in the Class Vehicles, (f) requiring Defendant to provide extended warranty coverage that ensures the free replacement and/or repair of the Leaking Sunroof defect in Class Vehicles;

1    6.    An award of actual or compensatory damages in an amount according to

2  proof at trial;

3    7.    An award of attorney fees pursuant to statute including but not limited to

4  Cal. Civil Code §1794(d), Cal. Civil Code §1780(e) and/or Cal. Code of Civil Procedure

5  §1021.5;

6    8.    For costs of suit;

7    9.    Pre- and post-judgment interest on any amounts awarded; and

8    10.   Such other relief as the Court deems fair, just equitable and proper.

9                                      By,

10  Dated: May 9, 2017                 /s/ Robert A. Waller, Jr.
                                       ROBERT A. WALLER, JR.
11                                     Attorneys for Plaintiff and the Class

12              **<u>DEMAND FOR JURY TRIAL</u>**

13       Plaintiff KELLEY GAINES individually and on behalf of all class members hereby

14  demands trial of their claims by jury to the extent authorized by law.

15  Dated: May 9, 2017                 /s/ Robert A. Waller, Jr.
                                       ROBERT A. WALLER, JR.
16                                     Attorneys for Plaintiff and the Class

17

18

19

20

21

22

23

24

25

26

27

28



EXHIBIT 1



# CONTACT US

Your complete satisfaction is important to us, and we're here to help. Please select your preferred contact choice below.

## FREQUENTLY ASKED QUESTIONS

At Cadillac we're focused on one goal: to make your visit to cadillac.com as rewarding and informative as possible. That's why we've created this intuitive section where if you have a question or want to learn more, you can search—by topic—for an answer.

Warranty | Roadside Assistance | Product Features | Safety | Parts & Accessories | Financing & Pricing | Certified Service | Account Creation, Access & Management | Vehicle Homepage & Dealer Information | Service History & Maintenance Schedule | GM Accounts | Warranty & Recalls

## WARRANTY

WHAT IS CADILLAC SHIELD?

WHAT IS CADILLAC PREMIUM CARE MAINTENANCE?

WHAT IS THE CADILLAC POWERTRAIN WARRANTY?

HOW IS THE BUMPER-TO-BUMPER WARRANTY AFFECTED BY THE POWERTRAIN WARRANTY?

WHY HAS CADILLAC ELECTED TO MAKE A CHANGE TO THE POWERTRAIN WARRANTY TERM FOR 2013 AND FUTURE VEHICLES?

WHAT IS COURTESY TRANSPORTATION?

HOW DOES CADILLAC'S POWERTRAIN WARRANTY COMPARE TO OTHER LUXURY COMPETITORS?

WHAT DOES THE BUMPER-TO-BUMPER WARRANTY COVER?

The bumper-to-bumper New Vehicle Limited Warranty covers vehicles registered in the U.S. and Canada from the date the vehicle is first delivered until it reaches 4 years or 50,000 miles (whichever occurs first). It covers the vehicle from bumper to bumper on any vehicle defect related to materials or workmanship. For further details, look in the Warranty book under "What Is Covered" and "What Is Not Covered."

IS MY VEHICLE COVERED FROM RUST, TOO?

DO I HAVE TO GO THE CADILLAC DEALER WHERE I PURCHASED MY VEHICLE TO HAVE THIS TYPE OF WORK PERFORMED?

CAN I TAKE MY CADILLAC TO ANY GM DEALERSHIP FOR WARRANTY REPAIRS?

IS CADILLAC PART OF GENERAL MOTORS?



EXHIBIT 2



# CONTACT US

Your complete satisfaction is important to us, and we're here to help. Please select your preferred contact choice below.

## FREQUENTLY ASKED QUESTIONS

At Cadillac we're focused on one goal: to make your visit to cadillac.com as rewarding and informative as possible. That's why we've created this intuitive section where if you have a question or want to learn more, you can search—by topic—for an answer.

Warranty | Roadside Assistance | Product Features | Safety | Parts & Accessories | Financing & Pricing | Certified Service | Account Creation, Access & Management | Vehicle Homepage & Dealer Information | Service History & Maintenance Schedule | GM Accounts | Warranty & Recalls

## WARRANTY

WHAT IS CADILLAC SHIELD?

At Cadillac, we believe our owners deserve it all. That's why every 2011 or newer vehicle is backed by Cadillac Shield, the most comprehensive suite of owner benefits by any luxury automotive brand in the world. From innovations like Remote Vehicle Diagnostics and advanced mobile apps to our Premium Care Maintenance program, Cadillac Shield gives luxury owners everything they need.

WHAT IS CADILLAC PREMIUM CARE MAINTENANCE?

WHAT IS THE CADILLAC POWERTRAIN WARRANTY?

HOW IS THE BUMPER-TO-BUMPER WARRANTY AFFECTED BY THE POWERTRAIN WARRANTY?

WHY HAS CADILLAC ELECTED TO MAKE A CHANGE TO THE POWERTRAIN WARRANTY TERM FOR 2013 AND FUTURE VEHICLES?

WHAT IS COURTESY TRANSPORTATION?

HOW DOES CADILLAC'S POWERTRAIN WARRANTY COMPARE TO OTHER LUXURY COMPETITORS?

WHAT DOES THE BUMPER-TO-BUMPER WARRANTY COVER?

IS MY VEHICLE COVERED FROM RUST, TOO?

DO I HAVE TO GO THE CADILLAC DEALER WHERE I PURCHASED MY VEHICLE TO HAVE THIS TYPE OF WORK PERFORMED?

CAN I TAKE MY CADILLAC TO ANY GM DEALERSHIP FOR WARRANTY REPAIRS?

IS CADILLAC PART OF GENERAL MOTORS?



EXHIBIT 3

Document ID: 3610923

# #PI0044D: Water Leak at Driver/Front Passenger Floor Area and/or Front Carpet Wet - (Aug 30, 2013)

**Subject: Water Leak at Driver/Front Passenger Floor Area and/or Front Carpet Wet**

**Models: 2010-2013 Cadillac SRX**



This PI has been revised to update the Condition/Concern, Recommendation/Instructions sections and update the Warranty Information with the Global Labor Code (GLC). Please discard PI0044C.

## Condition/Concern

Some customers may comment on seeing a water leak in the driver or front passenger floor area and/or finding the front carpet wet.

The most common causes of this concern are:

- There may be a void in the cowl seam sealer, in the corners below the sunroof drain hose grommets.
- The sunroof front drain hose grommet(s) may not be connected or fully seated in the cowl panel or at the sunroof frame spigot.
- The sunroof front drain hoses are mis-routed or are too short, and display a higher level of tension. This higher tension may tend to cause a future disconnect or unseating of the grommet.

## Recommendation/Instructions

**Complete the following inspection procedure before doing any repairs.**

**Water Test Inspection Procedure**

1. Park the vehicle on a level surface.
2. Fully open the sunroof window.
3. Fill an appropriate container with approximately 16 ounces (473 ml) of water.



4. Pour water into the outboard front corner of the sunroof frame on one side of the vehicle, and immediately inspect the area rearward of the front tire for water flowing out onto the floor surface.

5. Repeat steps 3 and 4 on the opposite side.

   ◦ If water is properly flowing out the front drain hoses, jump ahead to the "Seal Cowl Seam Repair Procedure" section below and complete the repair steps listed.

   ◦ If water is NOT properly flowing out the front drain hoses, first replace BOTH sunroof front drain hoses following the repair steps below, then continue ahead and complete the "Seal Cowl Seam Repair Procedure" repair steps.

**Left and Right Sunroof Front Drain Hose Replacement Procedure**

**Note:** Refer to the GM Parts Catalog for the appropriate front drain hose part numbers.



1. Starting on the left or right side, remove the windshield garnish molding from the A-pillar by pulling gently from the top to disengage the attachment clip. Detach the rubber stop (1) on the tether clip from the molding and disconnect the speaker wiring harness (2).

© 2013 General Motors.  All rights reserved.



2. Remove the sunshade. Refer to Sunshade Replacement in SI.



3. Remove the front assist handle. Refer to Front Assist Handle Replacement in SI.



4. Pull the front corner of the headliner downward to access the drain hose and sunroof drain spigot connection, circled above.



5. Disengage the sunroof drain hose from the attachment points on the windshield pillar (1).

6. Disconnect the front sunroof drain hose from the sunroof drain spigot (2).

7. Disconnect the drain hose and grommet (3) from the cowl panel.

8. Remove the drain hose (4) from the vehicle.



**Important:** Verify proper engagement of the grommet to cowl panel to prevent a water leak.

9. Using a long, thin suitable tool (1), connect the grommet end of the hose (2) to the cowl panel by pushing the grommet into its hole.



10. Connect the front sunroof drain hose to the sunroof drain spigot (2).

11. Connect the sunroof drain hose to the attachment points on the windshield pillar (1).

12. Repeat steps 1-11 on the opposite side of the vehicle.

13. Water test the vehicle before installing the headliner and trim.

14. Reposition the headliner and reinstall the left and right front assist handles. Refer to Front Assist Handle Replacement in SI.

15. Reinstall the left and right sunshades. Refer to Sunshade Replacement in SI.

16. Reattach the tether clips and reconnect the speaker wiring harness to the left and right windshield garnish moldings.

17. Ensuring the retaining tabs are fully seated, position the left and right garnish to the A-pillars and push securely in place.

**Seal Cowl Seam Repair Procedure**

Apply sealer to the front cowl seam following the steps below:



1. Remove the air inlet grille panel. Refer to Air Inlet Grille Panel Replacement in SI.



2. Inspect that the front sunroof drain hoses and grommets (1) are connected and fully seated to the cowl on both sides.

3. Water test the cowl by running water along the cowl seam (shown in the graphic above), which runs across the front of the vehicle.

4. If water drips are evident, inspect the seam for voids (2) in the sealer. Clean the affected area and seal the void with Kent High Tech™ Clear Seam Sealer, P/N P10200 (5 oz tube), or equivalent.

5. Reinstall the air inlet grille panel. Refer to Air Inlet Grille Panel Replacement in SI.

**Parts Information**

Contact Kent Automotive at 1–888–YES–Kent or online at www.kent-automotive.com.

| Part Number | Description |
|---|---|
| P10200 | Kent High Tech™ Clear |

## Warranty Information

For vehicles repaired under warranty, use:

| Labor Operation | Description | Labor Time |
|---|---|---|
| 6080058* | R & R Air Inlet Grille Panel – Apply Sealer to Cowl Seam | 0.6 hr |
| Add | Replace Both Sunroof Front Drain Hoses | 1.4 hrs |
| *This is a unique labor operation for bulletin use only. It will not be published in the Labor Time Guide. | | |

GM bulletins are intended for use by professional technicians, NOT a "do-it-yourselfer". They are written to inform these technicians of conditions that may occur on some vehicles, or to provide information that could assist in the proper service of a vehicle. Properly trained technicians have the equipment, tools, safety instructions, and know-how to do a job properly and safely. If a condition is described, DO NOT assume that the bulletin applies to your vehicle, or that your vehicle will have that condition. See your GM dealer for information on whether your vehicle may benefit from the information.



WE SUPPORT
VOLUNTARY
TECHNICIAN
CERTIFICATION



EXHIBIT 4

*SB-10052823-4367*



## Service Bulletin

File in Section:    -

Bulletin No.:   PI0044D

Date:   September, 2013

# PRELIMINARY INFORMATION

**Subject:**   **Water Leak at Driver/Front Passenger Floor Area and/or Front Carpet Wet**

**Models:**   **2010-2013 Cadillac SRX**

> **This PI has been revised to update the Condition/Concern, Recommendation/Instructions sections and update the Warranty Information with the Global Labor Code (GLC). Please discard PI0044C.**

## Condition/Concern

Some customers may comment on seeing a water leak in the driver or front passenger floor area and/or finding the front carpet wet.

The most common causes of this concern are:

- There may be a void in the cowl seam sealer, in the corners below the sunroof drain hose grommets.
- The sunroof front drain hose grommet(s) may not be connected or fully seated in the cowl panel or at the sunroof frame spigot.
- The sunroof front drain hoses are mis-routed or are too short, and display a higher level of tension. This higher tension may tend to cause a future disconnect or unseating of the grommet.

## Recommendation/Instructions

**Complete the following inspection procedure before doing any repairs.**

**Water Test Inspection Procedure**

1. Park the vehicle on a level surface.
2. Fully open the sunroof window.
3. Fill an appropriate container with approximately 16 ounces (473 ml) of water.



3610899

4. Pour water into the outboard front corner of the sunroof frame on one side of the vehicle, and immediately inspect the area rearward of the front tire for water flowing out onto the floor surface.

5. Repeat steps 3 and 4 on the opposite side.
   - If water is properly flowing out the front drain hoses, jump ahead to the "Seal Cowl Seam Repair Procedure" section below and complete the repair steps listed.
   - If water is NOT properly flowing out the front drain hoses, first replace BOTH sunroof front drain hoses following the repair steps below, then continue ahead and complete the "Seal Cowl Seam Repair Procedure" repair steps.

### Left and Right Sunroof Front Drain Hose Replacement Procedure

**Note:** Refer to the GM Parts Catalog for the appropriate front drain hose part numbers.



3610902

1. Starting on the left or right side, remove the windshield garnish molding from the A-pillar by pulling gently from the top to disengage the attachment clip. Detach the rubber stop (1) on the tether clip from the molding and disconnect the speaker wiring harness (2).



3610903

2. Remove the sunshade. Refer to Sunshade Replacement in SI.



3610906

3.  Remove the front assist handle. Refer to Front Assist Handle Replacement in SI.



3610910

4.  Pull the front corner of the headliner downward to access the drain hose and sunroof drain spigot connection, circled above.



2653136

5. Disengage the sunroof drain hose from the attachment points on the windshield pillar (1).
6. Disconnect the front sunroof drain hose from the sunroof drain spigot (2).
7. Disconnect the drain hose and grommet (3) from the cowl panel.
8. Remove the drain hose (4) from the vehicle.



3610909

**Important:** Verify proper engagement of the grommet to cowl panel to prevent a water leak.

9. Using a long, thin suitable tool (1), connect the grommet end of the hose (2) to the cowl panel by pushing the grommet into its hole.



2653136

10. Connect the front sunroof drain hose to the sunroof drain spigot (2).
11. Connect the sunroof drain hose to the attachment points on the windshield pillar (1).
12. Repeat steps 1-11 on the opposite side of the vehicle.
13. Water test the vehicle before installing the headliner and trim.
14. Reposition the headliner and reinstall the left and right front assist handles. Refer to Front Assist Handle Replacement in SI.
15. Reinstall the left and right sunshades. Refer to Sunshade Replacement in SI.
16. Reattach the tether clips and reconnect the speaker wiring harness to the left and right windshield garnish moldings.
17. Ensuring the retaining tabs are fully seated, position the left and right garnish to the A-pillars and push securely in place.

**Seal Cowl Seam Repair Procedure**

Apply sealer to the front cowl seam following the steps below:



2400317

1. Remove the air inlet grille panel. Refer to Air Inlet Grille Panel Replacement in SI.



3236000

2. Inspect that the front sunroof drain hoses and grommets (1) are connected and fully seated to the cowl on both sides.

3. Water test the cowl by running water along the cowl seam (shown in the graphic above), which runs across the front of the vehicle.

4. If water drips are evident, inspect the seam for voids (2) in the sealer. Clean the affected area and seal the void with Kent High Tech™ Clear Seam Sealer, P/N P10200 (5 oz tube), or equivalent.

5. Reinstall the air inlet grille panel. Refer to Air Inlet Grille Panel Replacement in SI.

## Parts Information

Contact Kent Automotive at 1–888–YES-Kent or online at www.kent-automotive.com.

| Part Number | Description |
|---|---|
| P10200 | Kent High Tech™ Clear |

## Warranty Information

For vehicles repaired under warranty, use:

| Labor Operation | Description | Labor Time |
|---|---|---|
| 6080058* | R & R Air Inlet Grille Panel – Apply Sealer to Cowl Seam | 0.6 hr |
| Add | Replace Both Sunroof Front Drain Hoses | 1.4 hrs |
| *This is a unique labor operation for bulletin use only. It will not be published in the Labor Time Guide. | | |



EXHIBIT 5

Document ID: 4060832

# #14225: Customer Satisfaction - Sunroof Drain Hose Leaks - (Jan 14, 2015)

**Subject: 14225 – Sunroof Drain Hose Leaks**

**Models: 2010-2012 Cadillac SRX**
**Equipped with Sunroof (RPO C3U)**
**Located in Alabama, Connecticut, Delaware, Florida, Georgia, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Mississippi, New Hampshire, New Jersey, New York, North Carolina, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Vermont, Virginia, Washington, West Virginia, Puerto Rico, British Columbia, New Brunswick, Newfoundland and Labrador, Nova Scotia, Ontario, Prince Edward Island, Quebec, and export vehicles located only in Europe.**



Dealers are to refer to the General Motors Service Policies and Procedures Manual, Section 6.1.2 - Regional Product Field Actions, for guidelines on handling vehicles that are not involved in this customer satisfaction program but may be displaying the same condition.

THIS PROGRAM IS IN EFFECT UNTIL JANUARY 31, 2017.

## Condition

Certain 2010-2012 model year Cadillac SRX vehicles equipped with a sunroof (RPO C3U) may have a condition in which the vehicle's sunroof drain hose material may shrink due to changing environmental conditions. If hose shrinkage occurs, it may result in the drain hoses detaching from the dash or sunroof module which would allow sunroof drain water to leak into the vehicle interior. Water leaked into the vehicle interior may damage interior components, including wiring, electronic modules, the sound deadener and carpet.

## Correction

Dealers are to replace the front sunroof drain hoses.

## Vehicles Involved

All involved vehicles are identified by Vehicle Identification Number on the Investigate Vehicle History screen in GM Global Warranty Management system. Dealership service personnel should always check this site to confirm vehicle involvement prior to beginning any required inspections and/or repairs. It is important to routinely use this tool to verify eligibility because not all similar vehicles may be involved regardless of description or option content.

For dealers with involved vehicles, a listing with involved vehicles containing the complete vehicle identification number, customer name, and address information has been prepared and will be provided to US and Canadian dealers through the GM GlobalConnect Recall Reports, or sent directly to export dealers. Dealers will not have a report available if they have no involved vehicles currently assigned.

The listing may contain customer names and addresses obtained from Motor Vehicle Registration Records. The use of such motor vehicle registration data for any purpose other than follow-up necessary to complete this program is a violation of law in several states/provinces/countries. Accordingly, you are urged to limit the use of this report to the follow-up necessary to complete this program.

## Parts Information

© 2015 General Motors.  All rights reserved.

Parts required to complete this program are to be obtained from General Motors Customer Care and Aftersales (GMCC&A). Please refer to your "involved vehicles listing" before ordering parts. Normal orders should be placed on a DRO = Daily Replenishment Order. In an emergency situation, parts should be ordered on a CSO = Customer Special Order.

| Part Number | Description | Quantity/Vehicle |
|---|---|---|
| 22864071 | HOSE ASM-SUN RF HSG FRT DRN - LH | 1 |
| 22864072 | HOSE ASM-SUN RF HSG FRT DRN - RH | 1 |

Service Procedure



1. Starting on the left or right side, remove the windshield garnish molding from the A-pillar by pulling gently from the top to disengage the attachment clip. Detach the rubber stop (1) on the tether clip from the molding and disconnect the speaker wiring harness (2).



2. Remove the sunshade. Refer to *Sunshade Replacement* in SI.



3. Remove the front assist handle. Refer to *Front Assist Handle Replacement* in SI.



4. Pull the front corner of the headliner downward to access the drain hose and sunroof drain spigot connection, circled above.



5. Disengage the sunroof drain hose from the attachment points on the windshield pillar (1).

6. Disconnect the front sunroof drain hose from the sunroof drain spigot (2).

7. Disconnect the drain hose and grommet (3) from the cowl panel.

8. Remove the drain hose (4) from the vehicle.



**Note:** Verify proper engagement of the grommet to cowl panel to prevent a water leak.

9. Using a long, thin suitable tool (1), connect the grommet end of the hose (2) to the cowl panel by pushing the grommet into its hole.



10. Connect the front sunroof drain hose to the sunroof drain spigot (2).

11. Connect the sunroof drain hose to the attachment points on the windshield pillar (1).

12. Repeat steps 1-11 on the opposite side of the vehicle.

13. Water test the front drain hoses before installing the headliner and trim.

14. Reposition the headliner and reinstall the left and right front assist handles. Refer to *Front Assist Handle Replacement* in SI.

15. Reinstall the left and right sunshades. Refer to *Sunshade Replacement* in SI.

16. Reattach the tether clips and reconnect the speaker wiring harness to the left and right windshield garnish moldings.

17. Ensuring the retaining tabs are fully seated, position the left and right garnish to the A-pillars and push securely in place.

Customer Reimbursement – For US

Customer requests for reimbursement of previously paid repairs for the recall condition are to be submitted to the dealer by January 31, 2016, unless otherwise specified by state law. If this is not convenient for the customer, they may mail the completed Customer Reimbursement Request Form and all required documents to the GM Customer Assistance Center.

**All reasonable and customary costs to correct the condition described in this bulletin should be considered for reimbursement. Any questions or concerns should be reviewed with your GM representative prior to processing the request.**

When a customer requests reimbursement, they must provide the following:

- A completed Customer Reimbursement Request Form. This form is mailed to the customer or can be obtained through GM GlobalConnect.
- The name and address of the person who paid for the repair.
- Paid receipt confirming the amount of the repair expense, a description of the repair, and the person or entity performing the repair.

Important: GM requires dealers to approve or deny a reimbursement request within 30 days of receipt. If a reimbursement request is approved, the dealer should immediately issue a check to the customer and submit an appropriate warranty transaction for the incurred expense. If a reimbursement request is denied, the dealer MUST provide the customer with a clear and concise explanation, in writing, as to why the request was denied. The bottom portion of the Customer Reimbursement Request Form may be used for this purpose. If the denial was due to missing documents, the customer can

resubmit the request when the missing documents are obtained, as long as it is still within the allowed reimbursement period.

Warranty transactions for customer reimbursement of previously paid repairs are to be submitted as required by GM Global Warranty Management. Additional information can also be found in Warranty Administration Bulletin 11-00-89-004.

## Customer Reimbursement – For Canada and Export

Customer requests for reimbursement of previously paid repairs to correct the condition described in this bulletin are to be submitted to the dealer prior to or by January 31, 2016.

When a customer requests reimbursement, they must provide the following:

– Proof of ownership at time of repair.

– Original paid receipt confirming the amount of unreimbursed repair expense(s) (including Service Contract deductibles), a description of the repair, and the person or entity performing the repair.

All reasonable and customary costs to correct the condition described in this bulletin should be considered for reimbursement. Any questions or concerns should be reviewed with your GM representative prior to processing the request.

## Courtesy Transportation – For US and Canada

The General Motors Courtesy Transportation program is intended to minimize customer inconvenience when a vehicle requires a repair that is covered by the New Vehicle Limited Warranties. The availability of courtesy transportation to customers whose vehicles are within the warranty coverage period and involved in a product program is very important in maintaining customer satisfaction. Dealers are to ensure that these customers understand that shuttle service or some other form of courtesy transportation is available and will be provided at no charge. Dealers should refer to the General Motors Service Policies and Procedures Manual for Courtesy Transportation guidelines.

## Warranty Transaction Information

Submit a transaction using the table below. All transactions should be submitted as a ZFAT transaction type, unless noted otherwise.

**Note:** To avoid having to "H" route the customer reimbursement transaction for approval, it must be submitted prior to the repair transaction.

| Labor Code | Description | Labor Time | Net Item |
|---|---|---|---|
| 9101163 | Sunroof Front Drain Hose Replacement (Both) | 1.4 | N/A |
| 9101164 | Customer Reimbursement Approved | 0.2 | * |
| 9101165 | Customer Reimbursement Denied - For US dealers only | 0.1 | N/A |

* The amount identified in "Net Item" should represent the dollar amount reimbursed to the customer.

## Customer Notification – For US and Canada

General Motors will notify customers of this program on their vehicle (see copy of customer letter included with this bulletin).

<u>Customer Notification – For Export</u>

Letters will be sent to known owners of record located within areas covered by the US National Traffic and Motor Vehicle Safety Act. For owners outside these areas, dealers should notify customers using the attached sample letter.

<u>Dealer Program Responsibility</u>

Dealers are to service all vehicles subject to this program at no charge to customers, regardless of mileage, age of vehicle, or ownership, through January 31, 2017.

Customers who have recently purchased vehicles sold from your vehicle inventory, and for which there is no customer information indicated on the involved vehicle listing, are to be contacted by the dealer. Arrangements are to be made to make the required correction according to the instructions contained in this bulletin. A copy of the customer letter is provided in this bulletin for your use in contacting customers. Program follow-up cards should not be used for this purpose, since the customer may not as yet have received the notification letter.

In summary, whenever a vehicle subject to this program enters your vehicle inventory, or is in your facility for service through January 31, 2017, you must take the steps necessary to be sure the program correction has been made before selling or releasing the vehicle.

January 2015

Dear General Motors Customer:

This notice applies to your vehicle, **VIN:** _____

We have learned that your 2010-2012 model year Cadillac SRX may have a condition in which the vehicle's sunroof drain hose material may shrink due to changing environmental conditions. If hose shrinkage occurs, it may result in the drain hoses detaching from the dash or sunroof module which would allow sunroof drain water to leak into the vehicle interior. Water leaked into the vehicle interior may damage interior components, including wiring, electronic modules, the sound deadener and carpet.

Your satisfaction with your Cadillac SRX is very important to us, so we are announcing a program to prevent this condition or, if it has occurred, to fix it.

**What We Will Do:** Your GM dealer will replace the front sunroof drain hoses on your vehicle. This service will be performed for you at **no charge until January 31, 2017**. After that, any applicable warranty will apply.

**What You Should Do:** To limit any possible inconvenience, we recommend that you contact your dealer as soon as possible to schedule an appointment for this repair. By scheduling an appointment, your dealer can ensure that the necessary parts will be available on your scheduled appointment date.

**Reimbursement:** If you have paid for repairs for the condition described in this letter, please complete the enclosed reimbursement form and present it to your dealer with all required documents. Working with your dealer will expedite your request, however, if this is not convenient, you may mail the completed reimbursement form and all required documents to Reimbursement Department, PO Box 33170, Detroit, MI 48232-5170. The completed form and required documents must be presented to your dealer or received by the Reimbursement Department by January 31, 2016, unless state law specifies a longer reimbursement period.

If you have any questions or concerns that your dealer is unable to resolve, please contact the appropriate Customer Assistance Center at the number listed below.

| Division | Number | Text Telephones (TTY) |
|----------|--------|-----------------------|
| Cadillac | 1-800-458-8006 | 1-800-833-2622 |

| Guam | 65-6267-1752 | |
|------|--------------|---|
| Puerto Rico – English | 1-800-496-9992 | |
| Puerto Rico – Español | 1-800-496-9993 | |
| Virgin Islands | 1-800-496-9994 | |

We sincerely regret any inconvenience or concern that this situation may cause you. We want you to know that we will do our best, throughout your ownership experience, to ensure that your Cadillac SRX provides you many miles of enjoyable driving.

Alicia S. Boler-Davis

Sr. Vice President

Global Connected Customer Experience

Enclosure

14225

GM bulletins are intended for use by professional technicians, NOT a "do-it-yourselfer". They are written to inform these technicians of conditions that may occur on some vehicles, or to provide information that could assist in the proper service of a vehicle. Properly trained technicians have the equipment, tools, safety instructions, and know-how to do a job properly and safely. If a condition is described, DO NOT assume that the bulletin applies to your vehicle, or that your vehicle will have that condition. See your GM dealer for information on whether your vehicle may benefit from the information.



WE SUPPORT
VOLUNTARY
TECHNICIAN
CERTIFICATION